UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPINE AND NEUROSURGERY INSTITUTE,<br>Plaintiff,<br>v.<br>JP MORGAN CHASE & CO., et al.,<br>Defendants. | Case No. 19-cv-03552-PJH<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS WITHOUT PREJUDICE**<br><br>Re: Dkt. No. 20, 22 |

Defendants JP Morgan Chase ("defendant JPM") and United Healthcare Insurance Co.'s ("defendant United Healthcare") (collectively, "defendants") motion for judgment on the pleadings came on for hearing before this court on December 18, 2019. Plaintiff California Spine and Neurosurgery Institute ("plaintiff") appeared through its counsel, Anthony Maul. Defendant appeared through their counsel, Jessica Hardy. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby **GRANTS WITHOUT PREJUDICE** defendants' motion for the following reasons.

**BACKGROUND**

On March 22, 2019, plaintiff filed this action against defendants in Alameda County Superior Court. Dkt. 1-1 (Compl.). In its complaint, plaintiff alleges state law claims for quantum meruit and promissory estoppel in connection with plaintiff's provision of surgical services to an unidentified insured patient, "BM."

On June 19, 2019, defendants removed the action to this court. Dkt. 1. On November 13, 2019, defendants filed this motion for judgment on the pleadings. Id. 20.

At core, defendants argue that plaintiff's state law claims are expressly preempted by Title 29 U.S.C. § 1144(a). As further explained below, the court's resolution of this motion turns on whether plaintiff's state law claims "relate to" the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as that phrase is understood under Title 29 U.S.C. § 1144(a). For that reason, the court details the allegations of this otherwise straightforward dispute below.

### A. The Operative Allegations

Plaintiff provides complex surgeries to patients in Mountain View. Compl. ¶ 1. Defendant JPM (the investment bank) sponsors an "employee health insurance plan" that is administered on defendant JPM's behalf by defendant United Health under an administrative services agreement. Id. ¶ 4. Defendant United Health operates as a managed care company and "insurers [sic] and administers" health insurance policies. Id. ¶ 5. With respect to defendant United Health, plaintiff is an "out of network" provider, which means that plaintiff "has not contracted with [defendant United Health] to participate in its provider network, or to provide services to its insureds at particular reimbursement rates." Id. ¶ 8. BM is a middle-aged man who received the subject surgical services on his lower back pursuant to defendant JPM's plan. Id. ¶¶ 6, 7.

Plaintiff's claims "arise from" defendants' "drastic underpayment for highly complex and skilled surgical services" that plaintiff provided to BM. Id. ¶ 6. On or around August 23, 2018, plaintiff's staff called defendant United Health "to verify the details of BM's insurance coverage and benefits." Id. ¶ 9. According to plaintiff, "[a] representative of [defendant United Health] informed plaintiff's staff that [defendant United Health's] payment for covered care rendered to BM by out-of-network providers would be based on 'usual and customary rates.'" Id. Plaintiff's staff recorded this information "on an insurance verification form." Id.

Plaintiff alleges that the phrase "usual and customary" is "a term of art in the healthcare and insurance industry" and "refers to the ordinary market rates charged in a geographic area for similar medical services provided under similar circumstances by

2

providers with similar training and expertise." Id. ¶ 10. Plaintiff further alleges that the California Department of Managed Health Care has adopted regulations codifying the definition of "reasonable and customary" to have a specific meaning and that defendants are aware of the meaning of "usual and customary" as defined by the California regulations. Id. Plaintiff subsequently alleges that defendant United Health "promised" to pay plaintiff the "usual and customary rates." Id. ¶ 14. Plaintiff relies upon the parties' August 23, 2018 phone call as the basis for such alleged promise. Id. ¶ 17.

Before performing the subject surgery on BM, plaintiff "sought prior approval of coverage from defendant United Health." Id. ¶ 11. On or about August 27, 2018, defendant United Health sent plaintiff a letter approving plaintiff's performance of back surgery on BM. Id. Such approval cited certain service codes as eligible for coverage. Id. Defendants did not reverse their prior approval of coverage. Id. ¶ 14.

On September 6, 2018, plaintiff performed surgery on BM. Id. ¶ 12. Plaintiff then billed defendants for its services using the cited service codes and applying plaintiff's standard rates for such services. Id. In total, plaintiff charged defendants $77,000. Id. Plaintiff alleges that the rates ultimately charged to defendants "reflected the reasonable and customary value of the services at issue" and that plaintiff's standard rates "are based on payments plaintiff has historically received from other payers, as well as plaintiff's understanding of the prevailing rates" in Silicon Valley for such services as provided by comparable doctors. Id. ¶ 13.

Defendant United Health paid plaintiff only $2,300 for the surgery provided by plaintiff to BM. Id. ¶ 14. Defendant United Health contended that the "allowed amount" for all services provided by plaintiff was "only $6,600, $4,300 of which was chargeable to [BM's] deductible, copayment or coinsurance." Id. ¶ 14. Plaintiff alleges that such allowed amounts "are far below even the average rates for such services in plaintiff's geographic area," much less the rates of a doctor with the qualifications of the surgeon here. Id. ¶ 15. Plaintiff further alleges that it "would not have performed the services upon BM, let alone sought pre-approval of coverage from [defendant United Health], had

3

it known defendants would pay an amount so far below usual and customary rates." Id.

Significantly, in its complaint, plaintiff makes no reference to an assignment of any rights, including those under an ERISA plan, by BM to plaintiff.

### 1. Allegations in Support of Quantum Meruit Claim

Defendant United Health "pre-approved coverage" for BM's surgical services and "explicitly told plaintiff's staff that reimbursement for such services would be made pursuant to 'usual and customary' rates." Id. ¶ 17. According to plaintiff, such statements by defendant United Health, acting as an agent of defendant JPM, constitute a "clear and unambiguous promise that defendants would pay plaintiff 'usual and customary' rates for the surgical services plaintiff provided BM." Id. In reliance upon such promises, plaintiff provided BM with valuable services. Id. ¶ 18. At the time of the surgery, plaintiff was unaware that such promises were false and reasonably believed them to be true. Id. "Since the promises were made in response to direct inquiries by plaintiff's staff regarding the patient's insurance coverage and benefits, it was foreseeable that plaintiff would rely on them." Id.

Significantly, when describing its damages under this claim, plaintiff alleges that "[a]s a direct and proximate result of defendants' failure to carry out their promises, plaintiff was injured in the amount of $74,700 (minus any applicable deductibles, coinsurance or copayments owed by the patient)." Id. ¶ 19.

### 2. Allegations in Support of Promissory Estoppel Claim

Plaintiff alleges that "[d]efendants contract with participants and beneficiaries of their policies to provide payment for medically necessary healthcare in exchange for the payment of insurance premiums. As a result, plaintiff conferred tangible benefit upon defendants when it rendered highly-skilled medical services to defendants' insured, BM." Id. ¶ 23. Plaintiff further adds that it provided defendant these services to BM in response to defendant United Health's promise to pay "reasonable and customary" rates for services, id. ¶ 24, and that the fair value of the services plaintiff provided to BM is $77,000, id. ¶ 25.

Again, when describing its damages under this claim, plaintiff similarly alleges that "[a]s a result of defendants' conduct, plaintiff has been underpaid $74,700 (minus any applicable deductibles, coinsurance or copayments owed by the patient)." Id. ¶ 27.

### B. Defendants' Removal

Defendants removed this action on the basis of federal question jurisdiction under Title 28 U.S.C. § 1331, specifically ERISA, Title 29 U.S.C. §§ 1001 *et. seq.*. Dkt. 1 ¶ 6. In particular, defendants argue that plaintiff "seeks to collect benefits under [BM's] employee health benefit plan," which are "provided under an employee welfare benefit plan, pursuant to [ERISA]." Id. ¶ 8. Defendants take the position that a "well-pleaded complaint would have necessarily disclosed that the benefits plaintiff seeks to collect are provided under an ERISA-governed employee welfare benefit plan." Id. ¶ 9. Citing Title 29 U.S.C. § 1132, defendants argue that "ERISA's civil enforcement provisions govern actions to recover any benefits due under an ERISA plan." Id. As a result, defendants contend, plaintiff's claims are "completely preempted" because they are premised on the allegation that "defendants wrongfully refused to pay benefits that were due under an ERISA-governed benefit plan." Id.

At oral argument, the parties represented to this court that federal subject matter jurisdiction is separately appropriate pursuant to diversity jurisdiction under Title 28 U.S.C. § 1332. Given the amount in controversy and complete diversity of citizenship between the parties—Compl. ¶ 1 (plaintiff is a California corporation), ¶ 4 (defendant JPM is a Delaware corporation), and ¶ 5 (defendant United Health is a Connecticut corporation), the court is satisfied with such representation.

## DISCUSSION

### A. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The legal standards governing Rules 12(c) and 12(b)(6) are "functionally identical." Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Federal Rule of Civil Procedure 8 requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), dismissal "is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

Lastly, a district court "should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations;" however, dismissal without such leave "is proper if it is clear that the complaint could not be saved by amendment." Somers, 729 F.3d at 960.

**B. Analysis**

Title 29 U.S.C. § 1144(a) provides that certain ERISA related provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and [are] not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). Courts refer to preemption under Title 29 U.S.C. § 1144(a) as "express" preemption. Depot, Inc. v. Caring for Montanans, Inc., 915 F.3d 643, 665 (9th Cir.), cert. denied, 140 S. Ct. 223 (2019) (""[T]wo strands of ERISA preemption" are relevant here: (1) "express" preemption under 29 U.S.C. § 1144(a); and (2) "conflict" preemption based on 29 U.S.C. § 1132(a).").

The United States Supreme Court in Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936 (2016) acknowledged that 29 U.S.C. § 1144(a) expressly preempts two categories of state law. First, ERISA expressly preempts state laws that "ha[ve] an impermissible

'connection with' ERISA plans, meaning a state law that 'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" Gobeille, 136 S. Ct. at 943. The Supreme Court in Gobeille further acknowledged that "[a] state law also might have an impermissible connection with ERISA plans if 'acute, albeit indirect, economic effects' of the state law 'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'" Id. Because the court finds that plaintiff's claims fall within the second category of expressly preempted state law claims (addressed immediately below), it need not analyze express preemption under this category of laws.

Second, ERISA expressly preempts state laws that "ha[ve] a reference to' ERISA plans. To be more precise, where a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . . , that 'reference' will result in pre-emption." Gobeille, 136 S. Ct. at 943. The Ninth Circuit recently explained that "[a] state-law claim has a 'reference to' an ERISA plan' if it 'is premised on the existence of an ERISA plan' or if 'the existence of the plan is essential to the claim's survival.'" Depot, Inc., 915 F.3d at 665.

Here, plaintiff's state law claims for promissory estoppel and quantum meruit are premised upon BM's ERISA plan. Significantly, plaintiff's complaint shows that, absent such plan, the promise allegedly made by defendant on August 23, 2018 neither could nor would have been made. Tellingly, plaintiff alleges that it called defendant United Health "to verify the details of BM's insurance coverage and benefits," Compl. ¶ 9, which, as plaintiff itself recognizes, BM was entitled to under his "employee health insurance plan" with defendant JPM, id. ¶¶ 4,6.[1] Plaintiff further recognizes that the specifics of its communication with defendant JPM was recorded "on an insurance verification form." Id. ¶ 9. Absent BM's ERISA plan, plaintiff would have no reason to call defendant United Health "to verify" BM's coverage and, incidentally, defendant United Health would not

---

[1] In its opposition to this motion, plaintiff did not contest that such plan qualifies as an "employee benefit plan" for purpose of Title 29 U.S.C. § 1144(a).

7

have made any oral representation concerning BM's coverage rights. Without such communication, plaintiff would have no alleged promise to sue upon. Without such promise, plaintiff would have no state law claims. In short, the court finds that plaintiff's state law claims have "reference to" BM's ERISA plan because they are premised upon the existence of such plan and, without such plan, could not state a cause of action under state law.

Separately, plaintiff's measure of damages for both its promissory estoppel and quantum meruit claims "refer to" BM's ERISA plan. In its complaint, plaintiff alleges that it "has been underpaid $74,700 (minus any applicable **deductibles, coinsurance or copayments** owed by the patient)." Compl. ¶¶ 19, 27 (emphasis added). While plaintiff's complaint does not specify how the amounts of such "deductibles, coinsurance, or copayments" would be defined, the court may reasonably infer that such definitions derive from BM's "insurance coverage and benefits," id. ¶ 9, which arise from his ERISA plan, id. ¶¶ 4, 6. Given such relationship, plaintiff's state law claims also "refer to" BM's ERISA plan within the meaning of Title 29 U.S.C. § 1144(a) for this separate reason.

Plaintiff's reliance upon Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan, 321 F. App'x 563 (9th Cir. 2008) and Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc., 187 F.3d 1045 (9th Cir. 1999) does not alter this holding. First, the Ninth Circuit in Catholic Healthcare assumed, without deciding, that the provider's state law claims in that case were "completely independent of the terms and meaning of an ERISA plan." 321 F. App'x at 564-65 ("It is our reading of the Complaint—confirmed by counsel at oral argument—that [provider] has alleged implied contract formation and misrepresentations that are *completely independent* of the terms and meaning of an ERISA plan.") (emphasis in the original).

Here, plaintiff's state law claims depend upon BM's ERISA plan for two reasons: (1) they are necessarily predicated upon such plan's existence (i.e., without the plan, plaintiff would not have called defendant United Health and the alleged promise would never have been made); and (2) their measure of damages depends upon the meaning

8

of certain terms (deductible, coinsurance, and copayment) fixed by such plan. While the court acknowledges the Ninth Circuit's statement in Catholic Healthcare that "where a third party medical provider sues an ERISA plan based on contractual obligations arising directly between the provider and the ERISA plan (or for misrepresentations of coverage made by the ERISA plan to the provider), no ERISA-governed relationship is implicated and the claim is not preempted," 321 F. App'x at 564, plaintiff failed to show how the alleged promise by defendant United Health directly arose from a contractual or tortious relationship independent of BM's ERISA plan.

Second, the panel in Blue Cross of California considered express preemption under Title 29 U.S.C. § 1144(a) in the context of a separate written provider agreement between the defendant insurer and plaintiff healthcare provider. 187 F.3d 1047 ("We are asked to determine whether the claims of medical providers against a health care plan for breach of their provider agreements are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*"). Relying on reasoning offered in its complete preemption analysis under Title 29 U.S.C. § 1132, the Ninth Circuit rejected the contention that the providers' claims "rely upon the construction of terms" in the subject ERISA plans. Id. at 1053 ("The first contention has already been addressed by our discussion of ERISA's civil enforcement provision. The Providers' claims do not involve construction of the terms of ERISA-covered benefit plans.").

In that incorporated reasoning, the Ninth Circuit found that the providers' claims did not require construction of the ERISA plan because (1) the providers and insurer had executed separate agreements, which formed the basis for the providers' separate claims, id. at 1051 ("Here, in contrast, the Providers and Blue Cross have executed provider agreements, and it is the terms of the provider agreements that Providers contend Blue Cross has breached."); (2) the providers were actually asserting claims that their patient-assignors, in fact, could not, id. at 1051 ("Indeed, the Providers are asserting contractual breaches, and related violations of the implied duty of good faith and fair dealing, that their patient-assignors could not assert: the patients simply are not parties to

9

1 the provider agreements between the Providers and Blue Cross."); and (3) the dispute

2 concerned a variable—namely the amount of payment—that depended upon that

3 separate provider-insurer agreement, id. at 1051 ("The dispute here is not over the *right*

4 to payment, which might be said to depend on the patients' assignments to the Providers,

5 but the *amount,* or level, of payment, which depends on the terms of the provider

6 agreements.") (emphasis added).

7 Here, plaintiff has not identified any separate agreement that may form the basis

8 for its state law claims against defendant United Health. While generally citing Blue

9 Cross of California at oral argument, plaintiff failed to explain how defendant United

10 Health's alleged oral representation that it would pay the "usual and customary" rates of

11 BM's surgery such representation qualifies as a "separate agreement" within the meaning

12 of that decision. Additionally, a fair reading of plaintiff's complaint shows that the scope

13 of plaintiff's claim is no different than that which BM could otherwise have asserted for

14 nonpayment of benefits under his plan if BM were liable to plaintiff for the unpaid amount

15 at issue. Relatedly, unlike Blue Cross of California, plaintiff's state law claims here do not

16 implicate a measure of damages defined by reference to actual fee schedules in a

17 separate provider agreement. 187 F.3d 1045, 1051 ("But the Providers' claims arise from

18 Blue Cross' alleged breach of the provider agreements' provisions **regarding fee**

19 **schedules**, and the procedure for setting them, not what charges are 'covered' under the

20 Prudent Buyer Plan.") (emphasis added). In short, the court finds that plaintiff's state law

21 claims refer to BM's ERISA plan within the meaning of Title 29 U.S.C. § 1144(a). As a

22 result, such claims are expressly preempted by that section and therefore subject to

23 dismissal.

24 **C.     Plaintiff May Amend His Complaint to Allege Assignment**

25 At oral argument, plaintiff identified the following two sets of allegations to include

26 as amendments to its complaint. First, plaintiff offered to amend its complaint to specify

27 defendant United Health's oral representations about certain copayment-related

28 information during the August 23, 2018 phone call. Plaintiff proffers this set of allegations

in support of its existing state law claims.  Second, plaintiff requested the opportunity to allege its assignment of BM's rights under his ERISA plan and, correspondingly, a claim under ERISA's civil enforcement provision, Title 29 U.S.C. § 1132(a).

With respect to the first set, the court finds that such amendment would be futile. As detailed above, plaintiff's state law quantum meruit and promissory estoppel claims inevitably refer to BM's ERISA plan because, but-for such plan, the oral promise supporting plaintiff's state law claims would not have been made.  Plaintiff failed to explain how additional or more specific allegations of defendant United Health's oral representations about certain copayment-related information would materially change such relationship between the promise and plan.  As a result, the court **DENIES** plaintiff's request to amend with respect to its first set of proffered allegations.

With respect to the second set, the court finds that such amendment would not be futile and **GRANTS** plaintiff's request to amend its complaint to allege its assignment of rights under BM's plan as well as a claim under Title 29 U.S.C. § 1132(a).  The court orders plaintiff to file any such amended pleading by **January 20, 2020**.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** defendants' motion for judgment on the pleadings **WITHOUT PREJUDICE**.   Relatedly, for the reasons stated at the hearing, the court also **DENIES** as moot defendants' request for judicial notice (Dkt. 22).  Plaintiff may file an amended pleading consistent with the amendments analyzed above.  Plaintiff must file any such pleading by **January 20, 2020**.

**IT IS SO ORDERED.**

Dated: December 23, 2019

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge